UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
BRENDA MCCLARY

                                Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal entity; Sergeant
SONIA CHRISTIAN (Shield #3066); MATTHEW VORRARO
(Shield #15194); MARK KIPYBIDA (Shield #14549); Officer
GREGORY MICHELS; RONALD SCHMIDT (Shield #21228);
and New York City Police Officers JOHN DOEs 1-20, all
individually and in their capacities as agents and/or employees of
the New York City Police Department and the City of New York,

                                Defendants.
-------------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

12-cv-118 (CBA) (VVP)

       Plaintiff Brenda McClary, by her attorneys, Beldock Levine & Hoffman LLP, as and for her complaint against the City of New York and all defendant parties, alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the plaintiff, BRENDA MCCLARY, seeks relief for defendants' violations, under color of state law, of her rights, privileges and immunities secured by 42 U.S.C. §1983; the Fourth, Fifth and Fourteenth Amendments to the United States Constitution; Article I, §§ 6 and 12 of the New York State Constitution; and New York State statutory, administrative and common law.

2. Plaintiff is a homeowner in Queens, New York. In the course of searching plaintiff's home, defendants, the CITY OF NEW YORK; Sergeant SONIA CHRISTIAN (Shield #3066); Officer MATTHEW VORRARO (Shield #15194); Officer MARK KIPYBIDA

1

(Shield #14549); Officer GREGORY MICHELS; Officer RONALD SCHMIDT (Shield #21228); and New York City Police Officers JOHN DOEs 1-20; individually and, as the case may be, in their official capacities, jointly and severally, did cause plaintiff BRENDA MCCLARY to be subject to, *inter alia*, violations of her Fourth Amendment rights to be free of unreasonable searches, free of a warrantless search of her home, and free of excessive and unreasonable destruction of her property during a search of her home; violations of her Fifth and Fourteenth Amendment Rights not to be deprived of property without due process of law; and the torts of conversion, negligent and intentional infliction of emotional distress, negligence, and negligent supervision. Defendants caused excessive and costly damage to plaintiff's home, in addition to mental and emotional distress, embarrassment, pain and suffering, and financial loss.

3. Plaintiff seeks (i) a declaratory judgment that defendants' search(es) of plaintiff's home violated plaintiff's Fourth Amendment rights; (ii) compensatory damages for the property damage, psychological distress, and other financial loss caused by the illegal actions of the defendants; (iii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iv) such other and further relief, including costs and attorneys fees, as this Court deems equitable and just.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

5. Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

6.  Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

7.  Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(2), as this is the judicial district in which the events giving rise to the plaintiff's claims took place, and the plaintiff's home is located in this judicial district, at 112-40 Dillon Street, Queens, NY 11433.

## JURY DEMAND

8.  Plaintiff demands a trial by jury in this action on each and every one of her claims for which jury trial is legally available.

## THE PARTIES

9.  Plaintiff, BRENDA MCCLARY, is a citizen of the United States, who is and was at all times relevant to this complaint a resident of Queens County, City and State of New York.

10. Defendant CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, and does maintain the New York City Police Department (NYPD) which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

3

11. Defendants Sergeant SONIA CHRISTIAN (Shield #3066), MATTHEW VORRARO, (Shield #15194), MARK KIPYBIDA (Shield #14549), Officer GREGORY MICHELS, Officer RONALD SCHMIDT (Shield #21228); and New York City Police Officers JOHN DOEs 1-20, are NYPD Command and Police Officers who were involved in the search of plaintiff's home and all of the actions and conduct associated therewith, including, *inter alia*, the illegal search of the home without a warrant and the excessive and costly destruction of property; these defendants are sued individually and in their official capacities.

12. At all times relevant herein, defendants SONIA CHRISTIAN, MATTHEW VORRARO, MARK KIPYBIDA, Officer GREGORY MICHELS, Officer RONALD SCHMIDT (Shield #21228), and NYPD Officers JOHN DOEs 1-20 have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of defendant CITY and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, defendants have acted for and on behalf of defendant CITY and/or the NYPD with the power and authority vested in them as officers, agents and employees of defendant CITY and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents defendant CITY and/or the NYPD.

13. At the times relevant herein, defendants SONIA CHRISTIAN, MATTHEW VORRARO, MARK KIPYBIDA, Officer GREGORY MICHELS, Officer RONALD SCHMIDT (Shield #21228), and NYPD Officers JOHN DOEs 1-20 violated clearly established rights and standards under the Fourth, Fifth, and Fourteenth Amendments of the United

States Constitution of which a reasonable police officer and/or public official under their respective circumstances would have known.

## COMPLIANCE WITH GENERAL MUNICIPAL LAW

14. Plaintiff served her Notice of Claim upon the City of New York by certified mail on January 10, 2011, within 90 days of the events giving rise to plaintiff's claims.

15. This action is filed within a year and 90 days of the events giving rise to plaintiff's claims.

## STATEMENT OF FACTS

16. Plaintiff BRENDA MCCLARY lives at 112-40 Dillon Street, Queens, New York, 11433. She is co-owner of the home and is responsible for paying the mortgage.

17. Plaintiff's parents, Benjamin and Patsy McClary, purchased the house located at 112-40 Dillon Street in 1982. Plaintiff, then age 9, and her brother Darryl McClary, then age 7, moved into the home with their parents. Plaintiff has continued to reside in the home for the past twenty-nine years.

18. Plaintiff's father, a carpenter, built many parts of the home, including, among other things, the stairs from the first to the second floor, many custom made doors inside of the home, the kitchen cabinets, and covers for the radiators. The basement, unfinished when the home was purchased, was finished by plaintiff's father and his two brothers. Plaintiff's father worked 42 years at the same job to support his family, ensure that his family lived in a safe environment away from nearby projects, and maintain the family home. He was retired for only six years when he died in 2004.

19. Upon her father's retirement, plaintiff took over paying the mortgage on the home, though it remained in her father and mother's names. In 2005, plaintiff refinanced the mortgage in her own name, becoming a co-owner of the home with her mother, Patsy McClary.

20. Prior to and on October 12, 2010, plaintiff resided in the home with her brother, Darryl McClary. Darryl McClary's two daughters lived in the house part time.

21. On Tuesday, October 12, 2010, at approximately 1:35 p.m., police officers conducted a search of plaintiff's home.

22. Upon information and belief, police officers arrived at the home after a woman named Yolanda Lord-Achee called 911 and alleged that a man outside of her house, which was located across the street from plaintiff's house, had a gun.

23. Upon information and belief, Sergeant SONIA CHRISTIAN and Officer MATTHEW VORRARO of the NYPD responded to Ms. Lord-Achee's home, at 112-39 Dillon Street. Ms. Lord-Achee spoke to the officers and provided a false story that plaintiff's brother, Darryl McClary, had come to her place of employment with a handgun, that Ms. Lord-Achee then ran home, and that as she arrived home Ms. Lord-Achee saw Mr. McClary again, this time on the stoop of his own home with a handgun in his waistband.

24. The allegations made by Ms. Lord-Achee were untrue. Upon information and belief, Ms. Lord-Achee made a false report to police because she was angry with Mr. McClary. In fact, Ms. Lord-Achee admitted to police officers that she and members of her family were having an ongoing dispute with Mr. McClary.

25. Upon information and belief, although the officers were put on notice of the suspicious nature of these allegations, the defendants failed to take any steps to inquire further about

6

the circumstances of the dispute, which would have led them to take a less aggressive and unreasonable approach. Instead, police simply knocked on the door of 112-40 Dillon Street, and when Darryl McClary opened the door, immediately arrested Mr. McClary.

26. After Mr. McClary was removed from the home, handcuffed, walked to the street, and placed by a police vehicle, Officer VORRARO and other members of the NYPD entered 112-40 Dillon Street.

27. At the time that the officers entered 112-40 Dillon Street, the officers did not have a search warrant.

28. At the time that the officers entered 112-40 Dillon Street, all occupants of the home had been removed from the home by the officers, and there was no one inside of the home. The two children who stayed in the home part-time were in school.

29. At the time that the officers entered 112-40 Dillon Street, the officers did not have consent from any person to search the home.

30. At the time that the officers entered 112-40 Dillon Street, no exigent circumstances existed that would have justified a warrantless search of the unoccupied home.

31. The house at 112-40 Dillon Street has three floors and an attic. The basement floor contains a laundry room, a bedroom, and a third room used as both a storage room and an additional bedroom. The first floor contains a living room, a dining room, and a kitchen. The second floor contains a bathroom and three bedrooms. The attic is above the second floor; one must pull down a panel from the ceiling to access the attic.

32. Officer VORRARO alleged, in a Search Warrant Affidavit he filled out on October 12, 2010 after searching the house, that after entering the home without a warrant, he

7

observed a shotgun cartridge on the dresser in the "rear bedroom," and a shotgun on the floor of the attic.

33. After this initial search, a police officer approached Darryl McClary, showed Mr. McClary what appeared to be two shells, and asked Mr. McClary where they came from. Mr. McClary said nothing in response.

34. At no time did officers show Mr. McClary a gun or question Mr. McClary about a gun.

35. The same police officer then asked Mr. McClary for permission to search the home. Mr. McClary told the police officer that the police officer was not permitted to search the home.

36. Following this, Mr. McClary was transported to a police precinct.

37. Several NYPD officers, including defendant KIPYBIDA, remained outside of 112-40 Dillon Street.

38. When plaintiff arrived home from work, she encountered at least three officers, including Defendant KIPYBIDA, outside of her home. These officers did not permit plaintiff to enter her home.

39. These officers informed plaintiff that they were in the process of procuring a search warrant.

40. Upon information and belief, plaintiff waited outside of her home with the police officers for approximately seven hours while Defendant VORRARO procured a search warrant.

41. During this time Defendant VORRARO filled out a Search Warrant Affidavit. In the affidavit, VORRARO reported that he had found a shotgun shell and a shotgun in the home.

42. In the Affidavit, VORRARO claimed that he had entered the home, including the attic, without a warrant to see if Darryl McClary's children were inside of the home.

43. Upon information and belief, prior to entering the home without a warrant no officer ever asked Darryl McClary if he had children or if there were any children inside of the home.

44. Upon information and belief, at the time the search was conducted (approximately 1:35 p.m. on a weekday) Darryl McClary's children were in school.

45. Upon information and belief, defendant VORRARO was untruthful when he stated in his Affidavit that one shell and one shotgun had been found during the initial search of the home; in truth no guns were found during the initial search of the home.

46. After reviewing this Affidavit, a Judge signed a Search Warrant commanding officers to make a search of 112-40 Dillon Street. The Warrant did not instruct officers to search the grounds surrounding 112-40 Dillon Street.

47. Upon information and belief, police officers returned to 112-40 Dillon Street with a search warrant around 9:30 p.m.

48. Police officers provided plaintiff with a copy of the search warrant.

49. Police officers then proceeded to ransack 112-40 Dillon Street.

50. Plaintiff asked police officers whether she could come into the house during the search. Officers would not permit plaintiff to enter her home during the search.

51. Upon information and belief, officers searched the home for two to three hours while plaintiff waited outside.

52. During the search, officers caused unnecessary, unjustified and excessive damage to the home of the plaintiff, including, *inter alia*:

    a. Putting a large hole in the living room wall;

9

b. Cutting or tearing open the plaintiff's living room sofa;

c. Breaking, among other electronics, a television, a computer, a DVD player, a stereo, and a video game system;

d. Destroying the stairs leading from the first to the second floor by removing a stair from the staircase;

e. Ripping open the box on the side of the boiler in the basement, thereby damaging the spark ignite, which causes the heat to come on, and causing gas to come into the home when the heat was next used;

f. Ripping closet doors off of their hinges;

g. Ripping the doors of the kitchen cabinets off of their hinges;

h. Pulling apart the kitchen cabinets;

i. Pulling drywall off of and pulling insulation out of the basement walls;

j. Pulling the dryer hose out of the wall and breaking the washing machine and dryer such that they no longer function;

k. Pulling out and breaking pieces of the basement ceiling;

l. Pulling wires down from the damaged ceiling;

m. Pulling wires out of electrical sockets with such force that the sockets no longer function;

n. Pulling tiles off the bathroom floor, breaking and cracking bathroom floor tiles, and cracking a piece of marble at the entrance to the bathroom;

o. Destroying a sink and surrounding vanity such that it had to be replaced;

p. Pulling the tiles out of the shower near the shower body, and causing damage to the shower body itself;

    q. Ripping and/or cutting open mattresses and box springs; removing all mattresses in the home from their bed frames and leaving them leaning against various walls;

    r. Tearing wallpaper off of the wall;

    s. Pulling curtain rods and curtains off of the wall;

    t. Putting various cracks and/or holes in various walls;

    u. Breaking various personal items including at least two lamps;

    v. Pulling personal belongings out of closets, bureaus, china cabinets, and other locations and strewing them throughout the house and across the floor; and

    w. Walking on and destroying various personal objects including towels, clothing, DVDs and CDs.

53. During the search, police officers destroyed the property surrounding the home by, *inter alia*:

    a. Pulling up pieces of cracked concrete on the walkway at the back of the home;

    b. Tearing down the metal fencing separating the back yard from a railroad track;

    c. Breaking away the cement sealant around the house, causing water to leak into the home and wet the basement walls during bad weather; and

    d. Breaking into a storage shed at the back of the home by breaking the windows to the shed.

54. During the search, officers maliciously caused destruction that was unnecessary, excessive, and unrelated to the need to search for any object, including, *inter alia*,

    a. Placing plaintiff's personal papers, including papers that clearly contained financial information, into a bin and pouring water or some other clear liquid over the papers;

    b. Pulling a screen out of an upstairs window and throwing it into the yard;

    c. Tearing a hole in clear plastic that was placed over a basement window to keep out cold air;

    d. Moving personal items such as clothing out of one room and dumping them onto the floor of another room;

    e. Breaking the ball and chain in two toilets;

    f. Leaving open a small refrigerator in the basement, causing the food inside to spoil.

55. During the search, officers destroyed items that were built for the house by plaintiff's now deceased father, including

    a. The staircase leading from the first to the second floors;

    b. Two wooden covers for radiators;

    c. The kitchen cabinets; and

    d. The shelving in the upstairs hall closet.

56. After the search, the house was in an uninhabitable condition. Plaintiff was forced to rent a room in another residence from October 2010 to July 2011 while her home was repaired and cleaned.

57. Plaintiff paid thousands of dollars to repair the damage to her home. Plaintiff was required to, *inter alia*:

    a. Replace the basement walls and ceilings;

b. Repair the staircase;

c. Repair holes in various walls;

d. Replace the bathroom floor;

e. Replace the pipes and/or valves in the shower;

f. Replace the cement seal around the house foundation;

g. Replace the fence outside the home;

h. Repair the heating system, including installing a new spark ignite, replacing gas tubing and gas valve;

i. Repair electrical damage;

j. Replace dry wall;

k. And repair other damage.

58. As a result of the search and the damage caused by the search, plaintiff was required to replace destroyed personal property, including but not limited to furniture, electronics, and clothing.

59. In order to pay to repair the damage caused by defendants to her home, plaintiff had to remove money from her 401K retirement plan.

60. Plaintiff's homeowner insurance only covered a fraction of the cost of all repairs to the home and of repairing and/or replacing damaged personal property, because the damage had been caused during a police search of the home.

61. As a result of the search and the damage caused by the search, plaintiff lost her homeowner's insurance and was forced to take on lender placed insurance through her bank, causing plaintiff financial loss.

62. Plaintiff suffered psychological and emotional distress as a result of this incident, and began seeing a psychiatrist.

63. Ms. McClary underwent surgery in May of 2011. Due to stress, she did not heal as expected, and continues to require medical care.

## FIRST CAUSE OF ACTION
### Violation of Civil Rights Pursuant to Title 42.U.S.C. §1983
### (General Allegations, Fourth, Fifth and Fourteenth Amendments)

64. Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

65. In committing the acts complained of herein defendants acted under color of state law to deprive plaintiffs of certain constitutionally protected rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

    a. the right to be free from unreasonable searches;
    b. the right to be free from warrantless searches of the home in the absence of consent, exigent circumstances, or any other exception to the warrant requirement;
    c. the right to be free from excessive destruction of property during a search of the home;
    d. and the right not to be deprived of property without due process of law.

66. In violating plaintiffs' rights as set forth above, and other rights that will be proven at trial, defendants conducted a warrantless and illegal search of plaintiff's home, used the fruits of that illegal search to obtain a search warrant, and conducted a second illegal search of plaintiff's home, during which defendants caused unnecessary and excessive

14

damage to plaintiff's property, in violation of plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

67. As a direct and proximate result of defendants' deprivation of plaintiff's constitutional rights, plaintiff suffered the injuries and damages set forth above.

68. The conduct of defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### Respondeat Superior (City of New York)

69. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

70. Defendant the CITY OF NEW YORK is liable for the actions of the individual defendants under the doctrine of *respondeat superior*.

## THIRD CAUSE OF ACTION
### New York State Constitutional Violations

71. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

72. Such conduct breached the protections guaranteed to plaintiff by the New York State Constitution, Article I, §§ 6 and 12, including her rights to:

    A. freedom from unreasonable searches and seizures; and

    B. freedom from deprivation of property without due process of law.

73. Defendants' deprivation of plaintiff's rights under the New York State Constitution resulted in the injuries and damages set forth above.

## FOURTH CAUSE OF ACTION
### Conversion

74. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

75. The defendants, by the aforementioned acts, did intentionally and without authority assume or exercise control over the aforementioned property belonging to plaintiff, interfering with plaintiff's right of possession and causing damage to plaintiff's property.

76. Defendants' actions resulted in the injuries and damages set forth above.

## FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

77. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

78. The individual defendants, by the aforementioned acts, did commit extreme and outrageous conduct and thereby intentionally and/or recklessly caused plaintiff to suffer severe mental and emotional distress, pain and suffering, and damage to name and reputation.

79. Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

## SIXTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

80. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

81. The individual defendants, by their aforementioned acts, did negligently cause plaintiff to suffer mental and emotional distress, pain and suffering, and damage to name and reputation.

### SEVENTH CAUSE OF ACTION
### Negligence of the Individual Defendants

82. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

83. The individual defendants owed plaintiff a duty to use due care, including a duty not to perform an unreasonable search and a duty not to excessively damage property during their search of plaintiff's home. By their aforementioned acts, defendants negligently breached their duty to use due care in the performance of their duties, and failed to perform their duties as a reasonably prudent and careful officer and/or supervisor would have done under similar circumstances.

84. NYPD officers and supervisors who observed other officers violating the Fourth Amendment rights of plaintiff and breaching their duty of due care were negligent in failing to intervene and stop fellow officers from committing said violations.

85. The negligent actions of the individual defendants directly and proximately caused plaintiff's injuries and damages set forth above.

### EIGHTH CAUSE OF ACTION
### Negligent Supervision

86. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

87. The individual defendants owed plaintiff a duty to use due care at or about the time of the incidents described above.

88. Defendant SONIA CHRISTIAN, who was the supervising officer present at the incidents described above, and defendant the CITY OF NEW YORK, negligently supervised the defendant officers who searched plaintiff's home by failing to provide proper training, outline proper procedure, and provide proper supervision on the scene regarding obtaining a warrant prior to searching a home and searching a home without causing excessive damage.

89. In committing the aforementioned acts or omissions, defendants SONIA CHRISTIAN and the CITY OF NEW YORK negligently breached their duty to use due care, which directly and proximately resulted in the injuries and damages to Plaintiffs as alleged herein.

## DEMAND FOR RELIEF

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all defendants:

(a) a declaration that defendants violated the constitutional rights of plaintiff;

(b) compensatory damages for damage to property; emotional, psychological, and/or physical injuries; financial loss; and injuries to reputation suffered by plaintiff by reason of defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial;

(c) punitive damages against the individual defendants to the extent allowable by law;

(i) attorneys fees;

(j) the costs and disbursements of this action; and

(k) such other and further relief as appears just and proper.

Dated: New York, New York
~~April~~ **24**, 2012
May

                              BELDOCK LEVINE & HOFFMAN LLP

                              By: _/s/ Jonathan Moore_
                              Jonathan Moore
                              99 Park Avenue - Suite 1600
                              New York, New York 10016
                              (212) 490-0400

                              Attorneys for Brenda McClary